## Charles Gropp v. Carnegie Steel Company, Limited, Appellant.

*Master and servant—Defective machinery—Knowledge of the defect by plaintiff—Binding instructions.*

In an action for injury resulting to an employee arising from the defective condition of the machine or apparatus about which the plaintiff was working, where the uncontradicted evidence shows that the plaintiff knew or ought to have known that it was defective and dangerous, and failed to report the condition of said apparatus to the defendant's superintendent. the defendant is entitled to binding instructions.

Argued April 13, 1897. Appeal, No. 87, April T., 1897, by defendant, from judgment of C. P. No. 1, Allegheny Co., September Term, 1895, No. 211, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass for personal injuries.   Before STOWE, P. J.

The plaintiff, a skilled workman, was injured at the rod and wire mill of defendant.

In the process of manufacture of wire the rods pass through a series of rollers, and at one stage of the process a "pan" is used.   It is a plate of steel with angle iron bolted to its sides to keep it in shape, and is placed like an inclined plane so that the wire may run up to the rolls.   The plaintiff's duty as a "bender" was to guide the wire across this pan to the next set of rollers.   He had worked for two years at the next set of rolls and a number of times at this set, and had been working there for four days prior to the accident.   He could see the pan from both positions occupied by him, and the evidence was that he knew and saw or could have known and seen that this "pan" had been warped and turned up at the corners, by virtue of which a "last end" of the wire caught on the corner of the pan and flying round burned plaintiff's arm.   The court below left the question of negligence to the jury.

Verdict and judgment for plaintiff for $400.   Defendant appealed.

*Errors assigned* were, (1) In its answer to the defendant's fourth point, which point and answer are as follows : " 4. That if the jury find that the pan was so turned up at the edges and also find the plaintiff knew, or ought to have known, that it was, then there can be no recovery by the plaintiff.   *Answer:* This is affirmed unless the evidence leads you to believe that the danger was not so obvious or apparent as to indicate to plaintiff that accident was likely to arise from the fact that the edges were turned up."   (2) In its oral charge to the jury, as follows: "Here was this machine originally in proper condition.   We will assume, for the present, that it was allowed to get out of order.   The plaintiff saw or was bound to see that it was out of order by the turning up of the corner.   If he saw, or had reason to believe as an ordinarily cautious man, that that would increase the danger or risk of employment, and knowing that, worked at it, and this accident occurred by reason of that fact, he could not recover, because he has been guilty of contributory negligence.   But if the danger was increased by this condition of the pan, and yet was not so obvious to the plaintiff as to be

manifest to him that it might increase the danger of his working there, but was at the same time such a danger, or such an increased danger arising out of the defect, that the superintendent, with his knowledge of the machinery, and the duty devolving upon him to see that the machines were kept reasonably and properly as safe as they could under the circumstances, having seen it should have known that that would increase the danger to the plaintiff of working at this machine, then although the plaintiff himself saw the defect, the defendant might be liable, because the superintendent had this superior knowledge or assumed superior knowledge. In other words, the defendant might have known that this increased the danger, while it was not manifest in itself to the plaintiff. If this defect was such that the defendant saw, or was bound to see, that it would increase the danger to the plaintiff working there, and the plaintiff not being himself conscious of the increased danger still worked there, the defendant would be guilty of negligence, while the plaintiff would be guilty of no negligence because he did not, in the exercise of common judgment, anticipate danger that was known or should have been known to the defendant. This is drawing a very fine line, but the whole thing turns right there, and when you come to that point you have got to consider that question. Here is the plaintiff, a skilled workman; he sees the condition of things, or is bound to see just as the defendant's superintendent is bound to see it, and it is for you to determine whether the evidence satisfies you, each of these men seeing that the danger was not manifest to the plaintiff and yet was manifest and apparent to the defendant. If it was not manifest to either, neither of them has been guilty of negligence, and the plaintiff cannot recover. If it was manifest to both, both have been guilty of negligence and the plaintiff cannot recover. But if it was apparent to the defendant, and if, under the circumstances, it was not such as would be apparent to the plaintiff, and, not comprehending or not being bound to anticipate this danger, he worked on when the defendant should have known that the danger was increased, then the plaintiff may recover, because in that case the defendant would be guilty of negligence and the plaintiff would not." (3) In its answer to the defendant's eighth point, which point and answer are as follows: " 8. That under all the testimony the verdict must be for the defendant. Refused."

*Edwin W. Smith*, with him *G. D. Packer* and *Knox & Reed*, for appellant.—As to the rule of a master's liability for patent defects cited Master's Liability for Injuries to Servant, Bailey, 172; also Wood's Master and Servant, 773; Melchert v. Brewing Co., 140 Pa. 448.

The same principle is involved under the head of the master's duty of instruction, and the court has held that if a machine be not dangerous no special instruction as to the manner of using it is required: Zurn v. Tetlow, 134 Pa. 213; Melchert v. Brewing Co., 140 Pa. 448.

There is no duty on the part of a railroad company to instruct a skilled and experienced engineer in the dangers of a locomotive which he is set to operate where such locomotive is of the same general character as the one to which he has been accustomed: Bellows v. Railroad Co., 157 Pa. 51.

It is contended here that there was no presumption of greater knowledge of danger in this case on the part of the defendant than on the plaintiff, as he was a thoroughly skilled and competent man.

*A. Israel* of *Cohen & Israel*, for appellee.—In Brownfield v. Hughes, 128 Pa. 194, Justice STERRETT, delivering the opinion of the Supreme Court, says: "That exception to the general rule is recognized in several cases, among which is Patterson v. The Pittsburgh & Connellsville Railroad, 76 Pa. 389, in which it is said that 'When the servant, in obedience to the requirement of the master, incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution, the rule is different. In such case the master is liable for resulting accident.'"

To the same effect is Kehler v. Schwenck, 151 Pa. 505, 518; see also Bennett v. Glass Co., 158 Pa. 120.

The defendant knew or ought to have known of the unsafe condition of the place. Although the plaintiff knew it, his continuing to work with the machine does not necessarily constitute contributory negligence which bars his recovery, if the evidence shows that it might be used with safety by the exercise of great care; the evidence shows it could be so used and, whether or not it could have been safely used with great care, and, therefore,

whether or not the plaintiff is guilty of contributory negligence is a question for the jury, as the Supreme Court has said in Patterson v. Railroad Co., 76 Pa. 389; Brownfield v. Hughes, 128 Pa. 194; Kehler v. Schwenck, 151 Pa. 505, 518; Bennett v. Glass Co., 158 Pa. 120.

OPINION BY BEAVER, J., May 10, 1897:

The error of which the appellant complains lies within a very narrow compass. The general instructions of the trial judge in the court below and his answers to the numerous points presented by the defendant were in the main correct. The general principles of law governing the relation of master and servant in the use of machinery were carefully laid down and the relative duties of each fully explained. As to the point complained of the trial judge says: "This is drawing a very fine line, but the whole thing turns right there and, when you come to that point, you have got to consider that question. Here is the plaintiff—a skilled workman. He sees the condition of things or is bound to see, just as the defendant's superintendent is bound to see it, and it is for you to determine whether the evidence satisfies you, each of these men seeing, that the danger was not manifest to the plaintiff and yet was manifest and apparent to the defendant. If it was not manifest to either, neither of them has been guilty of negligence and the plaintiff cannot recover. If it was manifest to both, both have been guilty of negligence and the plaintiff cannot recover; but, if it was apparent to the defendant and if under the circumstances, it was not such as would be apparent to the plaintiff, and not comprehending or not being bound to anticipate this danger, he worked on when the defendant should have known that the danger was increasing, then the plaintiff may recover, because in that case the defendant would be guilty of negligence and the plaintiff would not." The testimony in regard to the condition of the pan, as it was called, or rather the trough through which the wire ran to and from the rolls is very weak and doubtful. It is enough to go to the jury, because they are the judges of the credibility of a witness, and there is little else in it.

The only testimony upon the subject was that of Edward Gibbons, a helper of the plaintiff, whose regular position was much more distant from the rolls than that of the plaintiff who

was the skilled workman.   He testified that the pan was warped
on the end of it—turned up.   The plaintiff, who had worked at
these rolls, called the first diamond, for four days immediately
preceding the accident, and one of his witnesses, Wilson, also
a skilled workman who worked at the same place, had neither
of them seen it, as they testify.   If it existed, it was such a
defect as they ought to have seen, and seeing, to have reported
to the superintendent of the mill.   The plaintiff's testimony in
regard to the danger attending such a condition of the pan as
is described by the witness Gibbons, is clear.   Gibbons says in
his testimony that he told Mr. Wilson somebody would get hurt
there, Wilson being a coemployee.   He also says that " it would
work all right but it would some day catch it."   Wilson in his
testimony says : " If the rod catches, it is bound to fly ; if any-
thing will hold the end it is bound to fly."   Here, then, is a de-
fect which, if it existed, must have been patent to the plaintiff
and to anyone working at the rolls.   The danger, if the defect
existed, must have been also apparent.   He had large experi-
ence as a roller ; had worked at these same rolls previously at
sundry times, and continuously according to his turn for four
days immediately prior to the accident.   He admits in his own
testimony that " he could see as well as Mr. Rigley (the super-
intendent) or anybody else, and that his eyesight was as sharp
as anybody's else."   Leaving out of view all the testimony of
the defendant, and considering this question solely from the tes-
timony offered by the plaintiff, what evidence is there for sub-
mission to the jury from which they could find or infer that the
defect complained of was apparent to the defendant, yet under
the circumstances was not such as would be apparent to the
plaintiff ; and how was it possible, in the absence of any evi-
dence upon that subject, for the jury to find that the plaintiff
could continue his work " not comprehending or not being
bound to anticipate this danger, when the defendant should
have known that the danger was increasing ? "   There are no
facts anywhere in the evidence upon which to base such a
finding.   There is no opinion of any witness, least of all of
any expert, from which such a conclusion could be drawn.

Upon a careful examination of the whole case, we are of the
opinion that the defendant's fourth point should have been af-
firmed without qualification, and that his eighth point " that

under all the testimony the verdict must be for the defendant," should also have been affirmed, and this upon the plain-. tiff's case as presented in the testimony adduced by him. The testimony of the defendant strengthens the moral aspect of its case, but not in any way its legal status. The judgment is reversed.